# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION
# www.flsb.uscourts.gov

| | |
|---|---|
| In re: | **CHAPTER 7** |
| **DAVID PEREZ and SILVIA OROZCO,** | **CASE NO.: 15-16136-RAM** |
| Debtors. | |

## DEBTORS' MOTION FOR REHEARING OR TO ALTER OR AMEND THE COURT'S ORDER GRANTING IN PART MOTION TO SURRENDER

David Perez and Silvia Orozco (the "Debtors"), by and through undersigned counsel and pursuant to Bankr.R. 9023, which adopts Fed.R.Civ.P. 59, respectfully request the Court rehear and/or alter or amend the Court's *Order Granting in Part Motion to Surrender* (the "*Surrender Order*") (ECF 152) to the extent that the Debtors request the Court revisit its ruling and deny the request to compel the Debtors to stop defending the pending foreclosure action. In addition to addressing the issues that the Court raised at the prior hearing regarding the Debtors' ability – or lack thereof – to discover the misdeeds of Washington Mutual and Wells Fargo, the Debtors also seek rehearing because the underlying mortgage is unenforceable based on the failure to pay documentary stamps after the mortgage was modified in violation of Fla. Stat. §§201.08 and 199.282, which is a matter that can be raised at any time. As grounds in support thereof the Debtors state as follows:

### I. This Honorable Court Should Rehear, Alter and/or Amend the *Surrender Order.*

1.  At the hearing and in the *Surrender Order* the Court focused – rightfully – on the application of the Eleventh Circuit's decision in *Failla v. Citibank, N.A.,* 838 F.3d 1170 (11th Cir. 2016). While it is true that the court in *Failla* directed the debtors in that case to cease

1

defending the pending foreclosure case, *Failla* does not stand for the overbroad proposition that a debtor must stop defending a foreclosure case always and without condition. The Court acknowledged this by ruling that the Debtors could continue to defend the foreclosure case to the extent the Debtor contested the Post-Bankruptcy Assignments (as the Court defined them).

2.  At the hearing the Debtors acknowledged that the Statement of Intention did list Wells Fargo as the mortgage holder, but asserted that at the time the bankruptcy was filed the Debtors did not know of the issues with the underlying indorsement and the potential fraud. Thus, the Debtor requested the Court allow the Debtors to continue to defend the foreclosure based on an unclean hands defense because the indorsement is a forgery and fraudulent.

3.  The Court stated during the hearing that, based on the fact that the foreclosure case had been pending for some time prior to the bankruptcy filing, the Debtors had the opportunity to discover the fraud and/or otherwise defective indorsement. Thus, the Court was not willing to look past the Debtor's Statement of Intention in applying *Failla* to this case.

4.  The issue of whether the Debtors could have discovered the fraud was not briefed in either the motion that Red Stick Acquisitions, LLC ("Red Stick") filed or the Debtors' response. The parties did discuss the issue, but the Debtors were not prepared to provide the Court with evidence that would refute any assertion that they could and/or should have discovered the fraud and/or issues with the defective indorsement.

5.  A review of the Circuit Court file demonstrates that the Debtors did in fact attempt to conduct discovery on the issue of the assignment of the note, but were stonewalled in obtaining responses to requests for production and interrogatories.[1]

---

[1] All documents referenced herein will be filed in a separate appendix of exhibits.

6.	Perhaps more on point to the issue of discovery, however, is that the Debtors also propounded a request for admissions. Admission Number 2 specifically requested Wells Fargo admit it was not the holder of the note.

7.	Wells Fargo never responded to the admissions; they were therefore deemed admitted. However, for some unknown reason the Circuit Court did not dismiss the case and instead entered a judgment on February 23, 2015 after a bench trial.

8.	Interestingly, however, on February 24, 2015 Wells Fargo moved for relief from the admissions that it never responded to. There is no notice of hearing or order on the motion on the Circuit Court Docket.

9.	The above demonstrates that the Debtors did seek discovery on the issue of standing by asking Wells Fargo to admit it was not the holder of the note. When Wells Fargo did not respond, the admission was deemed admitted. It was only after trial, and thus after discovery was closed, that Wells Fargo sought relief from the deemed admission.

10.	Given that Wells Fargo had admitted that it was not the holder, there was no reason for the Debtors to conduct any further discovery. The Debtors should not be penalized at this stage for relying on Wells' failure to respond to the admissions, as once said fact was admitted the Debtors had what they thought was sufficient.

11.	Even if the Debtors had attempted to conduct more discovery, however, it is unlikely they would have succeeded in obtaining any further information.

12.	The Debtors have submitted the Affidavit of Bruce Jacobs, who is the Debtors' current counsel in the foreclosure case. Mr. Jacobs has obtained a ruling that J.P. Morgan Chase engage in unclean hands by defying a court order to turn over discovery that would show

indorsements from Washington Mutual, like the same rubber-stamped indorsement in this case that the Debtors contest, were fraudulent, forgeries, or otherwise defective.

13.   Mr. Jacobs also details the scorched earth, bad faith, brass knuckle tactics he has overcome in attempting to uncover these issues and the actions that the various financial institutions and their counsel have undertaken in order to keep these issues under wraps. This fraud would certainly never be uncovered with normal due diligence in discovery.

14.   Based on Mr. Jacobs' testimony and experience in these matters, the Debtors respectfully assert that the Court's assumption that the Debtors could or should have discovered the issues with the Washington Mutual indorsement was made without the issues being fully vetted – which is understandable given the fact that they were not raised in any of the papers the parties filed – was made in error.

15.   The Debtors therefore assert that, once these additional matters are considered, the facts of this case take it outside of *Failla* and thus give the Debtors grounds to continue to defend the foreclosure case on the grounds that the indorsement from Washington Mutual to Wells Fargo was fraudulent and/otherwise defective.

16.   A thorough review of *Failla* demonstrates that there were no allegations that the mortgage holder in that case (Citibank) or any predecessors, if there were any, had engaged in any misconduct. The debtors in *Failla* never asserted that there were issues with the mortgage documents or that there was a fraudulent or otherwise defective indorsement in the chain of assignments. *Failla* was therefore a fairly straightforward application of Section 521(a)(2) in a case where no irregularities were alleged.

17.   On the other hand, in the instant case the Debtors have asserted that the indorsement on the note from Washington Mutual is fraudulent, forged and/or otherwise

4

defective, and that Washington Mutual and others have actively attempted to conceal this issue in bad faith. Nothing in *Failla* compels a debtor to stop defending a foreclosure when there are assertions of unclean hands, or other improper conduct that implicates criminal statutes and systemic fraud upon the courts on the part of the alleged lender or creditor.

18. It is actually counterintuitive to apply *Failla* in a case such as the instant one where improper conduct has been asserted. As Judge Colton noted in In *In re Ayala*, 568 B.R. 870 (Bankr. M.D. Fla. 2017) the *Failla* court specifically stated that its holding was intended to address perceived abuses in the bankruptcy system. Indeed. the *Failla* court went to great lengths to discuss how debtors who continue to defend foreclosure actions after agreeing to surrender are either making a mockery of or otherwise abusing the system, and should not be allowed to do so. *See Failla*, 838 F.3d at 1178 ("In bankruptcy, as in life, a person does not get to have his cake and eat it too.")

19. In this case, however, the Debtors are asserting that Washington Mutual and Wells Fargo engaged in misconduct that a court of equity should not condone. If the court in *Failla* was truly concerned with parties making a mockery of or otherwise abusing the legal system, then allowing a debtor to contest a foreclosure when there are allegations of fraud and/or other misconduct – allegations that the Debtors in this case have supported with rulings from other courts, as well as deposition testimony – would be consistent with *Failla*'s attempts to curb abuses of the judicial system.

20. The Debtors recognize that *Failla* is binding precedent. However, as the courts in *Ayala*, *In in re McHale*, 593 B.R. 670 (Bankr. M.D. Fla. 2018) and *In re Thomas*, 2017 U.S. Bankr. LEXIS 2204 (Bankr. S.D. Fla. 2017) all recognized – and as this Court recognized by

only granting the original motion in part – *Failla* has limits. The Debtors respectfully assert that this case falls outside *Failla*'s limits for the reasons stated herein and in Mr. Jacobs' affidavit.

21. There are colorable allegations in this case that the indorsements from Washington Mutual are fraudulent, forged and/or otherwise defective. There are likewise colorable assertions that the Debtors never could or should have discovered the misdeeds of Washington Mutual and/or Wells Fargo because J.P. Morgan Chase's counsel orchestrated staunch defiance of courts orders using perjury and lack of candor by officers of the court.

22. This Honorable Court should also take judicial notice of the Corrected First Amended Complaint Mr. Jacobs filed against JP Morgan Chase under the False Claims Act in the Southern District of Florida case number 1:20-Cv-20543-Cannon. Leon Cosgrove is defending allegations that all the foreclosures J.P. Morgan Chase filed on behalf of Fannie Mae and Freddie Mac involving this systemic fraud involving forgery and perjury resulted in false claims.

23. The Debtors should not lose the ability to raise this defense because Wells Fargo misled them for years into thinking there was competent evidence that it had the right to foreclose the mortgage[2], and the Debtors relied on the far more sophisticated, national lending institution in believing that Wells Fargo would not present false evidence of standing.

---

[2] Although Red Stick never directly argues that the Debtors should have discovered the irregularities during the course of the foreclosure case, the motion did reference the fact that the Debtors modified the note and mortgage with Wells Fargo on at least one occasion. Moreover, Wells Fargo had to have represented to the Debtors on other occasions prior to the filing of foreclosure that it was their lender. There was no way for the Debtors to discover at any of these junctures prior to the foreclosure that the Washington Mutual indorsement was fraudulent and/or otherwise defective. Looking at the indorsement alone would not have given them any indication that there was an issue with the indorsements. That is why J.P. Morgan Chase used rubber stamps.

Case 15-16136-RAM    Doc 153    Filed 12/08/21    Page 7 of 15

*Case No. 15-16136-RAM*

24. The Debtors therefore request the Court grant this motion and alter and/or amend the prior order such that the Court denies Red Stick's motion in its entirety. The Debtors are not asking for *carte blanche* to raise all defenses that they might otherwise have.

25. The Debtors are asking they be able to assert a defense that other courts have already found is a viable defense and unclean hands – that the indorsement from Washington Mutual to Wells Fargo was fraudulent, forged, and/or otherwise defective. The Debtors should not be deprived of this opportunity when they relied on Wells Fargo in completing their Statement of Intention – a reliance that now seems to have not only been inappropriate but was based on facts that would not be uncovered until years later through the orders of several circuit judges obtained after Mr. Jacobs overcame scorched earth brass knuckle litigation to finally expose the truth.

## II. Failure to Pay Documentary Stamps is a Third Degree Felony and Renders the Mortgage Unenforceable in Any Florida Court

26. In addition to the above, the Debtors also assert that Red Stick, even assuming it is the proper successor to Wells Fargo, cannot enforce the mortgage because Wells Fargo failed to pay documentary stamp taxes on the mortgage when it was modified.

27. Fla. Stat. §199.282(1) makes it a third degree felony to not pay documentary stamps and Fla. Stat. §199.282(4) expressly provides no mortgage "shall be enforceable in any Florida court" when the documentary stamps are not paid.

28. Section 201.08, Fla. Stat. (2020) "imposes documentary stamp tax liability on promissory notes and other written obligations to pay money *and the renewal of same*."

29. Section 201.09 provides an exemption from the documentary stamp tax only when the renewal note 'only extends or continues the identical contractual obligations of the

original promissory note and evidences part or all of the original indebtedness evidenced thereby.'" *Am. Nat'l Bank v. Dep't of Rev.*, 593 So. 2d 1173, 1174 (Fla. 1st DCA 1992).

30. "Section 201.08, Florida Statutes, is concerned primarily with ensuring the payment of statutorily mandated taxes and provides that: The mortgage, trust deed, or other instrument ***shall not be enforceable in any court of this*** state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid." *Rappaport v. Hollywood Beach Resort Condominium Ass'n, Inc*., 905 So. 2d 1024, 1026 n.2 (Fla. 4th DCA 2005) (emphasis added).

31. What constitutes a "renewal" is defined in subsection five of Section 201.08 and includes modifications which increase the principal balance, or change the interest rate, maturity date, or payment terms; all of which were changed in the subject modification in this case.

32. Section 201.08(5), Fla. Stat. (2020), defines the term "Renewal" as follows: For purposes of this section, a renewal shall only include modifications of an original document which change the terms of the indebtedness evidenced by the original document by adding one or more obligors, ***increasing the principal balance, or changing the interest rate, maturity date, or payment terms***. (Emphasis added.)

33. Under the plain language of Section 201.08(1)(b), the modification is hence "***not enforceable in any court***... ***unless and until the tax due thereon... has been paid***." Florida Statute 201.08(1)(b)(emphasis added).

34. Here, Red Stick asks this Honorable Court to force the debtor to surrender so it may enforce a modified mortgage that increased the principal balance from $157,256.23 to $166,994.11.

35. It is now evident that mortgage servicers routinely modified mortgages since the 2008 crash and added the unpaid amounts to increase the principal balance without paying documentary stamps. Assuming at least a million mortgage modifications with a documentary stamp tax of $360.00, the State of Florida is owed $360 million in taxes which render the mortgages unenforceable in any Florida court.

### A. The Honorable Judge Pedro Echarte Jr. and the Honorable Judge Charles Johnson Recently Found Documentary Stamps are Required to Foreclose on Modified Mortgages under Fla. Stat. §201.08

36. On May 13, 2021, the Honorable Miami-Dade Circuit Judge Pedro Echarte, Jr., granted an involuntary dismissal on the same argument raised herein when raised by Ricky Corona, of the Corona law firm. In that case, Judge Echarte rejected the case of *Schroeder v. MTGLQ Invs., L.P.*, 290 So. 3d 93, 95 (Fla. 4th DCA 2020), *review denied sub nom. Schroeder v. MTGLQ Invs., LP*, No. SC20-368, 2020 WL 3525940 (Fla. June 30, 2020) because the issue of non-payment of documentary stamp taxes was raised at the trial level. Judge Echarte also rejected another Fourth DCA opinion allowing the lender or its assignee to pay documentary stamps after the fact citing "the Third DCA's negative treatment of that case, which is 183 So. 3d 424. "Appellate Court would *sua sponte* decline to enforce portion of particular mortgage liens for which mortgagee failed to pay documentary stamps and intangible taxes.'" *Nikoole v. JPMorgan Chase Bank, N.A.*, 183 So.3d 424, 430-31 (Fla. 3d DCA 2014).

37. On August 19, 2021, the Honorable Miami-Dade Circuit Judge Charles Johnson rejected the argument of Wilmington Savings Fund Society and found Fla. Stat. §201.08 "in fact requires payment of the documentary stamps in order for Plaintiff's modification to be enforceable." In full candor, Judge Johnson allowed Wilmington an opportunity to pay the taxes and continue the foreclosure.

38.     However, the failure to pay documentary stamps is considered a condition precedent to any enforcement of the mortgage. At this juncture, it appears that documentary stamps are still owed hundreds of thousands, if not millions, of modified mortgages. It should not be acceptable to simply pay the taxes in each case as the issue is raised.

### B. The Majority Rule Adopted by the Third DCA Renders the Mortgage Unenforceable by Any Court for Failure to Pay Documentary Stamps

39.     Every case where a bank files a "form" foreclosure complaint that alleges "all conditions precedent to … foreclosure of the Mortgage have occurred" is false when the bank failed to pay documentary stamps on the mortgage modification(s) for the underlying loan.

40.     The Honorable U.S. District Court Judge Darrin Gayles for the Southern District of Florida reached the same conclusion as Judge Echarte and Judge Johnson, and explained the majority rule interpreting this issue:

> Florida Statute § 201.08 provides that a mortgage, deed or other instrument is not enforceable unless the lender has paid the required documentary stamp taxes. Fla. Stat. § 201.08(1)(b). ***Many courts have interpreted this statute to require a lender to pay documentary taxes as a condition precedent to enforcing a promissory note.*** See *Suntrust Bank v. Hamway*, No. 09-61323, 2010 WL 146858, *4 (S.D. Fla. Jan. 11, 2010) ("[S]ection 201.08(1) constitutes an injunction prohibiting courts from enforcing rights created by instruments upon which required taxes have not been paid."); *Atlantic Tech Systems, LLC v. Advanced Lifts & Elevators, Inc*., No. 08-81376, 2009 WL 1211003, * 2 (S.D. Fla. May 4, 2009) ("To be sure, to prevail on a claim for breach of promissory note, Plaintiff will be required to demonstrate, prior to final judgment, that the documentary taxes have been paid."); *Nikoole v. JPMorgan Chase Bank, N.A.*, 183 So.3d 424, 430-31 (Fla. 3d DCA 2014) (failure to pay documentary tax rendered mortgage lien unenforceable); *Somma v. Metra Electronics Corp*., 727 So.2d 302, 303 (Fla. 5th DCA 1999) ("[P]romissory notes for which documentary taxes have not been paid are, as a matter of law, unenforceable by any Florida court.").

*Ben Fu Li v. Tan*, No. 17-CV-60363, 2017 WL 2464680, at *1 (S.D. Fla. June 7, 2017).

41.     Judge Gayles and Judge Echarte both expressly rejected the minority opinion from the Fourth DCA that allowed enforcement of the mortgage despite the failure to pay

documentary stamps. *Id.* at *2, rejecting *Glenn Wright Homes v. Lowy*, 18 So. 3d 693, 696 (Fla. 4th DCA 2009).

### C. The First, Second, Third, and Fifth DCAs All Adopt the Majority Rule That Mortgages are Unenforceable in Any Court When Documentary Stamps are Not Paid

42. A mortgage and any renewal of the same is not enforceable if the documentary tax stamps have not been paid. *In Somma v. Metra Electronics Corp.*, the Fifth District followed this precise logic and reversed a final judgment where the plaintiff had not paid the requisite documentary stamp taxes. 727 So. 2d 302, 303-305 (Fla. 5th DCA 1999). As *Somma* explained:

> In summary, promissory notes for which documentary taxes have not been paid are, as a matter of law, unenforceable by any Florida court. In an action to enforce such a note, once the court discovers that the documentary taxes have not been paid, the court must dismiss the action without prejudice, or upon proper motion abate the action for a time sufficient to enable the plaintiff to purchase documentary stamps and affix them to the note... Accordingly, we reverse the final judgment. Id. at 305.

43. In *Solis*, the Third District Court of Appeal cited to *Somma*, and it found that the trial court should not disregard the lender's failure to pay documentary taxes, holding:

> In an action to enforce a promissory note, ***when the trial court discovers that the documentary taxes have not been paid, the trial court must either dismiss the action without prejudice, or, upon motion, may abate the action to enable the party to purchase and affix the documentary stamps.*** *Solis v. Lacayo*, 86 So. 3d 1147, 1148 n.1 (Fla. 3d DCA 2012) (citing *Somma*, 727 So. 2d at 305) (emphasis added).

44. Similarly, in *Nikooie v. JPMorgan Chase Bank, N.A.*, the Third District reversed a final judgment of foreclosure and reiterated that failure to pay documentary tax rendered the mortgage lien unenforceable. The *Nikooie* court cited Fla. Stat. §201.08, and explained:

> Section 201.08(1)(b), Florida Statutes... specifies that a mortgage or other instrument 'shall not be enforceable in any court of this state as to any such advance unless and until the tax due thereon upon each advance that may have been made thereunder has been paid.' ***This is a statutory limitation on enforceability applicable to a mortgage lender in a Florida court whether or not***

11

Case 15-16136-RAM    Doc 153    Filed 12/08/21    Page 12 of 15

Case No. 15-16136-RAM

***the parties raise it (here, they did not). No payment of tax, no enforcement*...** 183 So. 3d 424, 430-431 (Fla. 3d DCA 2014) (emphasis added).

45. The rulings in *Solis, Somma*, and *Nikooie* all stand for the proposition that a modification is not enforceable where the documentary tax stamps have not been paid. 86 So. 3d 1148, n.1; 727 So. 2d at 304-305; 183 So. 3d at 430-431; *see also NCNB Nat'l Bank of Florida v. Dep't of Revenue*, 523 So. 2d 738 (Fla. 2d DCA 1988).

46. The Fifth District expressly stated in *Somma* that a party's failure to pay documentary stamp taxes was not an affirmative defense and need not have been argued or pled by the defendant below. *Somma*. at 304-305.

47. Echoing this rationale, the Third District's *Nikooie* decision followed *Somma*. *Nikooie* 183 So. 3d at 430-431 ("The Fifth District has addressed the particular question presented in the instant case, holding that 'any court,' including an appellate court, should refuse enforcement of a promissory note under section 201.08(1) if there is no evidence that the required documentary stamp taxes have been paid.").

48. The Third DCA held that because "we have become aware ***from the instruments in the record*** and the relief sought by the parties that the required taxes have not been paid. We conclude that we should not ignore the non-payment when it comes to our attention." *Nikooie v. JPMorgan Chase Bank, N.A.*, 183 So. 3d 424, 431 (Fla. 3rd DCA 2014)(emphasis added).

49. It is therefore proper to deny Red Stick's request to take any action that would enforce its rights under the mortgage for its failure to comply with Fla. Stat. § 201.08 where the modification with the proper stamp showing the documentary taxes were paid is not found, just as is if the modification itself was not introduced into evidence. See also, *Rattigan v. Central Mortg. Co.*, 199 So. 3d 966, 967 (Fla. 1st DCA 2016) (where the loan modification upon which

the lender's foreclosure judgment was predicated was not admitted into evidence, the ensuing judgment had to be reversed and remanded for an involuntary dismissal).

50. This is not an isolated incident where a lender mistakenly failed to pay a few hundred dollars in documentary stamps. Wells Fargo, Bank of America, JP Morgan Chase, and others are prosecuting foreclosures of modified loans across Florida with tens of millions of dollars in unpaid taxes due on those modifications to have access to Florida's courts.

51. If it were an isolated incident and the Court were inclined to grant leave to simply pay the documentary stamps with all interest and penalties, the controlling law would still prevent Wells Fargo from collecting any of attorney's fees incurred before paying the documentary stamps. *Bonfiglio v. Banker's Tr. Co. of California*, 944 So. 2d 1087, 1089 (Fla. 4th DCA 2006).

52. Perhaps Red Stick should receive a full refund and recover any damages from J.P. Morgan Chase, Washington Mutual or Wells Fargo for this systemic fraud in foreclosures where they have routinely and falsely alleged all conditions precedent were satisfied when documentary stamps are never paid on modified loans.

53. All of the foregoing supports the Debtors' request that the Court alter and/or amend the *Surrender Order* and allow the Debtors to defend the foreclosure action on the grounds set forth herein. This case is not the typical case that the Eleventh Circuit considered in *Failla*. The actions of the institutions referenced herein should not be case aside and ignored when the Debtors did not know of them and had no way to discover them. The Debtors therefore request the Court alter and/or amend the *Surrender Order* and allow them to continue to defend this matter based on the assertions set forth herein.

WHEREFORE, for the reasons stated herein, the Debtors respectfully request the Court grant this Motion, grant rehearing on the *Surrender Order*, alter or amend the *Surrender Order* such that the Debtors are allowed to continue to raise the issues of standing and improper/irregular/fraudulent indorsements that would be a defense to the authority of the Movant to enforce the note and mortgage, find that the mortgage is unenforceable based on the failure to pay documentary stamp taxes on the modification as well as grant any further relief the Court deems proper under the circumstances.

Dated this 8th day of December, 2021.

**JACOBS LEGAL, PLLC**
ALFRED I. DUPONT BUILDING
169 EAST FLAGLER STREET, SUITE 1620
MIAMI, FLORIDA 33131
TEL (305) 358-7991
FAX (305) 358-7992
SERVICE EMAIL: EFILE@JAKELEGAL.COM

BY:   */S/BRUCE JACOBS*
         BRUCE JACOBS
         FLORIDA BAR NO. 116203

**AND**

**LAW OFFICES OF ROBERT F. REYNOLDS, P.A.**
Counsel for the Debtors
515 East Las Olas Boulevard, Suite 850
Fort Lauderdale, Florida 33301
Telephone 954.766.9928
rreynolds@robertreynoldspa.com

By: /s/ Robert F. Reynolds
     ROBERT F. REYNOLDS
     Fla. Bar No. 174823

*Case No. 15-16136-RAM*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was service via the Court's CM/ECF procedures upon all parties entitled to notice on this 8th day of December,, 2021.

> By: /s/ Robert F. Reynolds
> ROBERT F. REYNOLDS