

ORDERED in the Southern District of Florida on March 17, 2022.

Robert A. Mark, Judge
United States Bankruptcy Court
_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

|  |  |  |
|---|---|---|
| In re: | ) | CASE NO. 15-16136-RAM |
|  | ) |  |
| DAVID PEREZ and SILVIA OROZCO, | ) | CHAPTER 7 |
|  | ) |  |
| Debtors. | ) |  |

**ORDER DENYING RECONSIDERATION OF ORDER ENFORCING SURRENDER**

To resolve the pending contested matter in this case, the Court must determine whether to apply the Eleventh Circuit's holding in *In re Failla*[1] and compel the Debtors to drop their defenses in a pending foreclosure action. Because the Debtors surrendered their home to the mortgage holder in this chapter 7 case, and all of their state court defenses arise from events that occurred prior to

---

[1] *Failla v. Citibank, N.A.* (*In re Failla*), 838 F.3d 1170 (11th Cir. 2016).

surrender, the Court concludes that *Failla* applies, and the lender is entitled to relief.

## Procedural Background

The Court conducted hearings on September 23, 2021 and November 23, 2021, on a Motion to Reopen Bankruptcy Case to Compel Surrender of Real Property (the "Motion to Compel") [DE# 138], filed by Creditor, Red Stick Acquisitions, LLC ("Red Stick"). By Order entered on September 27, 2021 [DE# 144], the Motion to Compel was granted in part, the case was reopened, and the Court set the November 23rd hearing and set briefing deadlines.

After review of the record, including the Motion to Compel, the Response in Opposition to Motion to Reopen Bankruptcy Case to Compel Surrender of Real Property (the "Debtors' Response") [DE# 150], and Red Stick's Reply [DE# 151], after consideration of the arguments presented by counsel at the November 23rd hearing, and after review of applicable law, the Court entered its November 24, 2021 Order Granting in Part Motion to Compel Surrender (the "Order Enforcing Surrender") [DE# 152].

On December 8, 2021, the Debtors filed a Motion for Rehearing or to Alter or Amend the Court's Order Granting in Part Motion to Compel Surrender (the "Motion for Reconsideration") [DE# 153]. The Court has considered the Motion for Reconsideration, the Notice of Filing Affidavit of Bruce Jacobs, Esq., in Support of Debtors' [Motion for Reconsideration] [DE#155], Red Stick Acquisitions, LLC's

2

Opposition to the [Motion for Reconsideration] [DE# 157], Debtors' Reply [DE# 158], and the Notice of Filing Additional Documents in Support of Debtors' [Motion for Reconsideration] [DE# 159]. The Court has also considered the arguments of counsel presented at the January 6, 2022 hearing on the Motion to Reconsider, and has reviewed applicable law, including three bankruptcy court decisions interpreting *Failla*.

This Order incorporates and supplements the findings and conclusions in the Order Enforcing Surrender and explains in greater detail why the Court concludes that *Failla* applies here.

## Facts

The material facts are not disputed.

The Debtors filed this chapter 7 case on April 4, 2015. The Debtors were represented by counsel throughout the case. In Schedule A, they listed their home located at 10971 SW 246th Street, Homestead, FL (the "Property") [DE# 19, p. 3]. In Schedule D, they listed "Wfhm" as the holder of a secured claim on the Property [DE# 19, p. 9]. The claim is not listed as contingent, unliquidated, or disputed.

In their chapter 7 case, the Debtors attempted to modify the mortgage on the Property under the Court's Mortgage Modification Mediation ("MMM") Program. Although the term "Wfhm" in Schedule D had only the initials of the secured creditor, the Motion for

3

Referral [to MMM] [DE# 28] spells out the mortgage holder as Wells Fargo Home Mortgage.[2]

Prior to the filing of the bankruptcy case, Wells Fargo Bank, N.A. ("Wells Fargo") filed a state court lawsuit to foreclose its mortgage on the Property, Case No. 2012-CA-1976, Circuit Court, Miami-Dade County (the "Foreclosure Case"). On February 23, 2015, also prior to the filing of this bankruptcy case, the state court entered a final judgment of foreclosure in favor of Wells Fargo and scheduled a foreclosure sale.  The filing of this bankruptcy case stopped the sale and gave the Debtors the opportunity to seek a modification of their mortgage in the MMM program.

The mediation was not successful, and on May 20, 2016, the Court granted Wells Fargo stay relief to proceed with the Foreclosure Case [DE# 101].  In their Statement of Intentions, the Debtors state that they will retain the Property "only if modified in MMM" [DE# 19, p. 33].   Because MMM failed, the Debtors are deemed to have surrendered the Property. The Debtors received a discharge on May 3, 2017, thus extinguishing their personal liability on the note secured by the mortgage on the Property.

Wells Fargo did not seek a new sale date.  Instead, on July 26, 2016, Wells Fargo moved to vacate the final judgment to add two

---

[2] The Debtors are not arguing that Wells Fargo Home Mortgage, the party named in the MMM motion, is a different entity than Wells Fargo Bank, N.A.

junior lienholders as defendants.  The state court vacated the final judgment, and Wells Fargo filed an amended complaint on August 24, 2017.

The note and mortgage held by Wells Fargo (the "Note and Mortgage") were assigned in 2017 to the Secretary of Housing and Urban Development ("HUD").  HUD assigned the Note and Mortgage to Wilmington Savings Fund Society, FSB in 2017, which then assigned the Note and Mortgage in 2017 to the Investment Fund IV, LP.  In 2020, the Investment Fund IV, LP assigned the Note and Mortgage to Red Stick.  The assignments described in this paragraph will be referred to collectively as the "Post-Bankruptcy Assignments".

**The Debtors Raise New Defenses in the Foreclosure Case**

Although not raised in the Foreclosure Case prior to entry of the pre-bankruptcy foreclosure judgment or prior to the filing of this bankruptcy case, Debtors' current counsel in the Foreclosure Case now challenges Wells Fargo's standing.  The Debtors are also asserting other defenses, including an argument that the mortgage is unenforceable because Wells Fargo did not pay documentary tax stamps when the mortgage was modified in 2007.  In support of their claimed right to assert defenses, the Debtor/Husband, David Perez, filed an affidavit in the Foreclosure Case stating that "I never surrendered my home in the Bankruptcy proceeding" [DE# 138, p. 113]. The Court finds nothing in the record of this bankruptcy case to support Debtor's statement. On August 30, 2021, Red Stick filed the

5

Motion to Compel seeking an order barring the Debtors from raising any defenses in the Foreclosure Case, citing *Failla* and arguing that the Property was surrendered to Wells Fargo in this bankruptcy case.

## Discussion

In *Failla*, the 11th Circuit held that "debtors who surrender their property can no longer contest a foreclosure action." 838 F.3d at 1177. Where debtors state an intention to surrender a property interest, they surrender their interest to the chapter 7 trustee, 11 U.S.C. § 521(a)(4), who can either abandon or administer the interest. Because the Trustee in this case abandoned any interest in the Property [DE# 107], the Debtors' interests in the Property were surrendered to Wells Fargo. *See In re Failla*, 838 F.3d 1170, 1176 (11th Cir. 2016).

Surrendering property interests to a creditor means "get[ting] out of the creditor's way." *In re Failla*, 838 F.3d at 1177. The 11th Circuit's ruling in *Failla* is based on the premise that "[a] debtor who promises to surrender property in bankruptcy court and then, once his debts are discharged, breaks that promise by opposing a foreclosure action in state court has abused the bankruptcy process." *In re Failla*, 838 F.3d at 1179 (citation omitted). In this case, the Debtors stated an intent to retain their Property "only if [their mortgage debt is] modified in MMM". They did not state an intent to retain their Property regardless of the outcome

of MMM, nor did they reserve their right to challenge Wells Fargo's standing at any point in the bankruptcy case.

The *Failla* holding is clear. Because the Debtors surrendered the Property to Wells Fargo in this bankruptcy case, they are barred from asserting in the Foreclosure Case that Wells Fargo lacked standing or asserting other defenses to foreclosure arising from pre-surrender events. "In bankruptcy, as in life, a person does not get to have his cake and eat it too." *In re Failla*, 838 F.3d at 1178.

### Debtors' Argument Against Applying *Failla*

The Debtors argue that compelling them to give up their defenses in the Foreclosure Case would be inequitable because Wells Fargo lacks standing to enforce the Note and Mortgage and the Debtors' due process rights entitle them to challenge Wells Fargo's standing. The Debtors allege that Wells Fargo lacks standing to enforce the Note and Mortgage because of the following alleged facts (collectively, the "Pre-Bankruptcy Events"): (i) both Washington Mutual Bank, F.A. ("WAMU") and the original mortgagee, Interstate Financial Mortgage Group Corp., endorsed the Note and Mortgage to Wells Fargo, making the provenance of Wells Fargo's interest in the Note and Mortgage unclear, (ii) assuming Wells Fargo acquired its interest in the Note and Mortgage from WAMU, that interest is not enforceable because WAMU transferred its interest to Wells Fargo via a rubber-stamped, undated endorsement (the "WAMU Endorsement"), and

7

(iii) even if properly acquired in the first instance, Wells Fargo cannot enforce the Note and Mortgage because it did not pay documentary stamp taxes when it agreed to modify the Note and Mortgage after acquisition.

The Debtors did not challenge Wells Fargo's standing to enforce the Note and Mortgage during their bankruptcy case. On the contrary, they recognized Wells Fargo's standing by scheduling the Wells Fargo debt as undisputed and by seeking to mediate a modification of the Note and Mortgage with Wells Fargo.

The Debtors state that deficiencies in the WAMU Endorsement were not easily discoverable because they were fraudulently concealed and that Wells Fargo's admissions in state court during pre-trial discovery on the issue of standing obviated the need to investigate the provenance and enforceability of Wells Fargo's interest in the Note and Mortgage. The Debtors contend that these facts, and the importance of preventing mortgage fraud as a matter of public policy, effectively nullify their surrender of their interests in the Property during their bankruptcy case. The Court disagrees.

> '[I]n order for surrender to mean *anything* in the context of § 521(a)(2), it has to mean that . . . debtor[s] . . . must not contest the efforts of the lienholder to foreclose on the property.' Otherwise, debtors could obtain a discharge in bankruptcy based, in part, on their sworn statement to surrender and 'enjoy possession of the collateral indefinitely while hindering and prolonging the state court process.'

*In re Failla*, 838 F.3d at 1177 (internal citations omitted) (emphasis in original).

In support of their argument, the Debtors rely on three post-*Failla* bankruptcy court decisions denying or limiting relief to the foreclosing lenders. As discussed below, these cases have significantly different facts than those presented here.

The Debtors cite *In re Thomas*, Case No. 12-38513-EPK, 2017 Bankr. LEXIS 2204 (Bankr. S.D. Fla. Feb. 10, 2017). In that case, Judge Kimball of this court found that "*Failla* does not require a surrendering debtor to concede the issue of standing." *Id.* at *4. Like the Debtors in this case, the debtor in *Thomas* was deemed to have surrendered his interest in the property subject of a foreclosure action. However, unlike this case, the debtor in *Thomas* did not state any intent with respect to his real property interest on his statement of intentions, and it is unclear whether the assignment that is the basis of the debtor's challenge to the lender's standing in *Thomas* occurred prior to the debtor's bankruptcy filing. The *Thomas* court ruled that "[h]aving surrendered the Real Property, Mr. Thomas is precluded from opposing the foreclosure action . . . except that Mr. Thomas may defend such action on the ground that Wells Fargo Bank, N.A. . . . lacks standing to pursue the action." *Id.* at *4-5.

At most, *Thomas* supports an argument that the standing defense is not waived by surrender if there is any ambiguity in who the

9

lender was on the filing date of the case. This could be true if, for example, the debtor schedules the debt as owed to Bank of America, and Wells Fargo files a proof of claim or is the plaintiff in a post-bankruptcy foreclosure complaint.

Those aren't the facts here. The Debtors scheduled Wells Fargo as the secured creditor with a Mortgage on the Property, did not dispute the mortgage debt, and voluntarily mediated with Wells Fargo in an effort to modify the Mortgage. The record is clear. The Property was surrendered to Wells Fargo.

Two months after *Thomas* was decided, another bankruptcy court interpreted *Failla*. *In re Ayala,* 568 B.R. 870 (Bankr. M.D. Fla. 2017). That court declined to compel the debtors to stop defending a post-bankruptcy foreclosure action despite the fact that the debtors expressly stated an intent to surrender their real property interests and received a discharge of their *in personam* liability for the mortgage debt. However, unlike the case here, the mortgagee's post-bankruptcy actions were the deciding factor. Space Coast Credit Union, the mortgagee in *Ayala*, "did not seek relief from the automatic stay in the chapter 7 case or seek to compel surrender of the property while the chapter 7 was open." *Id*. at 873.

Unlike the debtors in this case, no foreclosure proceeding was pending against the debtors in *Ayala* when those debtors filed for bankruptcy relief. In fact, the debtors in *Ayala* may have been current on their mortgage debt when they filed their bankruptcy

10

petition. Moreover, after they received a discharge and their bankruptcy case was closed, the debtors in *Ayala* continued to make mortgage payments and Space Coast accepted those post-bankruptcy payments. "[I]t is at least arguable that post-bankruptcy conduct by Space Coast may have resulted in a waiver of the Ayalas' 2011 'surrender.'" *Id*. at 874. There are no comparable indicia of post-bankruptcy waiver by Wells Fargo in this case.

This Court agrees with the *Ayala* court's conclusion that "*Failla* should not be viewed as *carte blanche* for post-bankruptcy lender misconduct." *In re Ayala*, 568 B.R. at 874 (emphasis added). If there is a basis to challenge Red Stick's standing based on post-bankruptcy occurrences, the Debtors are free to raise those defenses. This Court found, and continues to find, that the Debtors "may contest Red Stick's standing if they assert challenges to Post-Bankruptcy Assignments." *Order Enforcing Surrender* at p.4. The trouble is that the Debtors in this case seek relief to challenge Wells Fargo's, and thereby, Red Stick's, standing based only on Pre-Bankruptcy Events.

The third and final post-*Failla* case cited by the Debtors is *In re McHale*, 593. B.R. 670 (Bankr. M.D. Fla. 2018). *McHale* has the most distinguishable facts of the three cases on which the Debtors rely. The debtors in *McHale* were Charles McHale and his wife, Susan McHale. Although only Mr. McHale was liable for the mortgage debt,

11

both Mr. McHale and Mrs. McHale stated an intent to reaffirm the mortgage debt that encumbered their home.

The McHales were current with their mortgage payments when they filed for bankruptcy relief and remained current with their mortgage payments through issuance of their discharge. They did not formally reaffirm their home mortgage debt during the pendency of their bankruptcy case, and after the bankruptcy case was closed, Mr. McHale died.

Prior to his passing, Mr. McHale obtained a loan modification offer. His family made ten full payments under a temporary loan modification agreement, all of which were accepted by the mortgagee. After Mr. McHale died, the mortgagee refused to accept payments tendered by Mrs. McHale.

The *McHale* court recognized that, "[w]hen a debtor says he is going to surrender his home and then continues to fight a foreclosure action, in most cases, the appropriate remedy is for the bankruptcy court to squelch the debtor's defenses. The debtor is doing the exact opposite of what he promised." *In re McHale*, 593 B.R. at 677 (internal citations omitted). However, under the facts presented in *McHale*,

> no relief [was] justified against Mrs. McHale. She . . . never was personally liable to the lender. Mr. McHale's failure to sign or to not sign the reaffirmation agreement caused no prejudice to the lender . . . . And, given the [post-bankruptcy] change in circumstances due to the passage of time, Mr. McHale's death, the lender's post-bankruptcy modification of the loan, Mrs. McHale's current

12

> foreclosure defenses necessarily are different from those during the bankruptcy when the Debtors were current on their payments.

*In re McHale*, 593 B.R. at 681.

Unlike in *McHale*, in this case, the Debtors' current foreclosure defenses are no different than those that existed when the Debtors filed their petition for bankruptcy relief. Their current foreclosure defenses are based entirely on Pre-Bankruptcy Events.

As shown, all three of the post-*Failla* bankruptcy court decisions cited by the Debtors are distinguishable and none support denying application of *Failla* here. In *Thomas*, the court allowed assertion of a standing defense because there was no unambiguous surrender to the later-foreclosing creditor. In *Ayala* and *McHale*, the courts declined to apply *Failla* based upon significant post-surrender events. None of those facts are present here.

## Conclusion

The Eleventh Circuit has spoken. "Debtors who surrender their property can no longer contest a foreclosure action." *Failla*, 838 F.3d at 1177. Predictability is important. Bankruptcy judges should be wary of finding exceptions to binding precedent, and there is no cause to find an exception in this case. *Failla* would have no teeth, and the exceptions would swallow the rule, if courts failed to apply *Failla's* holding whenever post-bankruptcy foreclosure counsel alleges some pre-surrender technical defects or alleged misconduct

13

that occurred prior to surrender in the bankruptcy case. Where, as here, debtors surrender their property to an identified holder of their mortgage, the debtors are barred from later asserting in a foreclosure case that the identified mortgagee lacked standing and barred from asserting any other defenses based upon pre-surrender events.

Based upon the foregoing findings and conclusions, it is –

**ORDERED** as follows:

1. The Motion for Reconsideration is denied.

2. The Order Enforcing Surrender remains in full force and effect. Specifically, as stated in that Order, the Debtors are precluded from challenging Wells Fargo's standing in the Foreclosure Case but may contest Red Stick's standing if they assert challenges to the Post Bankruptcy Assignments. To be clear, the Debtors are precluded from challenging Red Stick's standing based upon any challenge to Wells Fargo's standing and precluded from asserting or maintaining any other defenses in the Foreclosure Case that are based upon facts that occurred prior to the filing of this bankruptcy case.

###

COPIES FURNISHED TO:
Owen H. Sokolof, Esq.
Robert F. Reynolds, Esq.

David Perez and Silvia Orozco
10971 SW 246 St.
Homestead, FL 33032

**(Attorney Sokolof is directed to serve a copy of this Order on the Debtors and also the Debtors' state court counsel, Bruce Jacobs, Esq., and file a Certificate of Service)**